# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | | |
|---|---|---|
| **JAMES THOMAS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No.  1:25-CV-1413-ADA-DH** |
| | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **PUBLIC SAFETY, ET AL.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ALAN D. ALBRIGHT
        UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Texas Department of Public Safety ("DPS"), Steven McCraw, Freeman Martin, and Walt Goodson's ("the Individual Defendants" and with DPS, "Defendants") motion to dismiss, Dkt. 10, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the motion be granted as to Thomas's hostile-work-environment and constructive-discharge claims against DPS, as well as his constitutional claims against the Individual Defendants, and otherwise denied.

## I.        BACKGROUND

This is an employment-discrimination case. Plaintiff James Thomas alleges that Defendants "engaged in racially discriminatory, retaliatory, and severe or pervasive harassing disparate treatment of Thomas" while he served as the chief of DPS's training operations division ("TOD"). Dkt. 9, at 3. While serving as chief,

1

Thomas engaged in "skip level" meetings, in which he met with "subordinates of subordinates," as a way of "receiving information and conveying information" and "positively affecting morale by allowing employees to be heard and by allowing Thomas, the Chief, to understand what was happening within his Division and possibly DPS, as a whole." *Id.* at 9. Thomas also took steps "to address and repair or change unfair and harmful actions against subordinate employees regardless of race or gender" and "to stop management representatives from making outsized decisions to the detriment of subordinate employees, again, regardless of race or gender." *Id.* at 18-19. Thomas alleges that while his actions "benefited mostly those racial minority and female employees" who "were being disparately mistreated without work-related justifications," they "were intended to and did benefit all employees (including the white employees)[.]" *Id.* at 19. For example, Thomas "changed or reversed some of the decisions" of his subordinates that he believed unfairly impacted their subordinate employees on the basis of race or sex. *Id.* at 19-20.

Despite not having violated any DPS policies or practices, Thomas was criticized by the Individual Defendants and ultimately demoted three ranks following his attempts to remedy alleged racist and sexist behavior within his division. *Id.* at 3, 20, 24. DPS demoted Thomas based on a report prepared during a director's inquiry by the Office of the Inspection General ("OIG"), which Thomas contends "contain[ed] multiple false and inaccurate, at best, statements." *Id.* at 14. Thomas notes that DPS's director, defendant McCraw, even told Thomas after the inquiry that it had not found any wrongdoing on Thomas's part. *Id.* at 3, 10. During the pendency of the

2

investigation, Thomas lodged an official complaint of race discrimination and retaliation. *Id.* at 3, 20. Following the conclusion of the director's inquiry, Thomas was demoted for "having been found to have violated DPS policies and practices." *Id.* at 20.

Thomas alleges that the director's inquiry and OIG report were pretexts to demote Thomas based on his opposition to race- and gender-based discrimination at DPS. *Id.* at 13, 36-45. Thomas contends that his treatment was "racially disparate given that other white employees, or employees that did not engage in protected activities … engaged in the same or similar actions as pretextually alleged against Thomas." *Id.* at 20. For example, while two other employees, a chief and a regional director, had also undergone a similar investigation, neither of them was demoted as Thomas was following the director's inquiry. *Id.* at 11. Thomas also alleges that other white supervisors who engaged in similar behavior did not experience any adverse employment actions. *Id.* at 18-19, 20-21, 23. Moreover, during his over twenty-year career at DPS, Thomas was always rated as an employee who "meets expectations" or higher in performance evaluations. *Id.* at 13. While serving as the chief of the TOD, Thomas was consistently rated as "exceeds expectations" in such reviews. *Id.*

Based on his demotion, Thomas brings claims against DPS under Title VII for discrimination, retaliation, hostile work environment, and constructive discharge. Dkt. 9, at 36-39. Thomas also brings claims against the Individual Defendants under section 1983 for violations of his First and Fourteenth Amendment rights. *Id.* at 39-45. Defendants move to dismiss Thomas's claims under Federal Rule of Civil

3

Procedure 12(b)(6), arguing that Thomas failed to plausibly state any claims for relief. Dkt. 10. Thomas opposes the motion, insisting that he pleaded sufficient facts to support his claims. Dkt. 11. In reply, Defendants maintain that Thomas failed to adequately plead his Title VII claims and that the Individual Defendants are entitled to qualified immunity on his constitutional claims. Dkt. 12.

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the

4

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.    DISCUSSION

Defendants move to dismiss Thomas's complaint on several grounds. First, Defendants argue that Thomas failed to allege facts showing a discriminatory motive on the part of Defendants or that similarly situated employees were treated more favorably than him, as required to state a discrimination claim under Title VII. Dkt. 10, at 4-7. Defendants also attack Thomas's Title VII retaliation claim for failing to plead a causal link between any protected activity and Thomas's demotion. *Id.* at 10. Defendants next insist that Thomas's hostile-work-environment and constructive-

discharge claims fail because he has not alleged sufficiently severe harassment to state such claims. *Id.* at 7-10. As to Thomas's constitutional claims, Defendants contend that he has failed to allege sufficient facts as to each of the Individual Defendants to properly plead such claims under section 1983. *Id.* at 10-16. Finally, they argue that the Individual Defendants are entitled to qualified immunity on Thomas's constitutional claims. *Id.* at 16-17. The undersigned will assess each of Thomas's claims below.

### A.   Thomas has adequately pleaded his discrimination claim brought under Title VII.

Thomas brought a claim against DPS for race discrimination in violation of Title VII based on a theory of disparate impact, alleging that while his "conduct and performance … was consistent with DPS policies and practices and DPS's white management representatives' conduct," Thomas was "disparately subjected" to investigation, demotion, and "other professionally stagnant, humiliating, and harmful circumstances." Dkt. 9, at 36-37. Defendants argue that Thomas did not allege sufficient facts showing a discriminatory motive on DPS's part or that similarly situated employees outside of Thomas's protected class were treated more favorably than Thomas. Dkt. 10, at 4-7. In response, Thomas insists that he sufficiently identified other white supervisors who engaged in the same conduct as Thomas but did not face any adverse employment actions. Dkt. 11, at 8 (citing Dkt. 9, at 23). Defendants counter that Thomas has still failed to plead facts showing how the comparators' conduct or situations were "nearly identical" to that of Thomas. Dkt. 12.

To establish a prima facie case of discriminatory discharge under Title VII, a plaintiff must plead (1) that he was a member of a protected class; (2) that he was qualified for her position; (3) that he was subject to an adverse employment action; and (4) that he was replaced by someone outside the protected class or that similarly situated employees outside of his protected class were treated more favorably. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). "While at this juncture, a plaintiff need not submit evidence to establish the prima facie case for discrimination, [he] must plead sufficient facts on all of the ultimate elements of the claim to make [his] case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019). For a discrimination claim based on disparate impact, these ultimate elements are "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of [his] protected status.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Defendants raise two challenges to Thomas's discrimination claim, both of which lack merit. First, Defendants argue that Thomas failed to plead any causal connection between his race and his demotion. Dkt. 10, at 5. Yet in making this argument, Defendants cherry-pick Thomas's allegation that "[t]he only apparent problem in this case for Thomas is that Thomas was engaging in this conduct while black" to suggest that he "has not allege[d] any direct facts of a discriminatory motive by DPS." Dkts. 9, at 23; 10, at 5. "In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." *Jackson v. Cal-W. Packaging*

7

*Corp.*, 602 F.3d 374, 377 (5th Cir. 2010); *Raj*, 714 F.3d at 331 (explaining that a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably"). Given that Thomas was not required to plead direct facts demonstrating that DPS demoted him based on his race, the undersigned rejects Defendants' argument that Thomas's discrimination claim should be dismissed on this basis.

Defendants also contend that Thomas failed to plausibly allege that he was treated less favorably than other similarly situated DPS employees outside of his protected class because "there are no facts that would allow the Court to infer any of the named individuals were 'similarly situated' to Thomas, nor does Thomas include facts about any 'similar actions' they had taken." Dkt. 10, at 5-6. A plaintiff can establish that "a defendant took the adverse employment action against a plaintiff *because of* [his] protected status" by showing that "similarly situated employees were treated more favorably." *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 645 (W.D. Tex. 2014), *aff'd*, 808 F.3d 266 (5th Cir. 2015) (citing *Raj*, 714 F.3d at 331; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (emphasis in original)). While Thomas will ultimately need to prove that a "similarly situated" employee outside his protected class was treated more favorably than Thomas under "nearly identical" circumstances, he need not make this showing at the pleading stage. *Cicalese*, 924 F.3d at 767-68; *see also Washington v. Veolia Water N. Am. Operating Servs., LLC*, No. 3:21-CV-356-CWR-FKB, 2022 WL 23471, at *1 (S.D. Miss. Jan. 3,

2022) ("The undersigned disagrees, however, that a Title VII complaint must enumerate the plaintiff's similarly-situated comparators.").

In his amended complaint, Thomas specifically and repeatedly alleges that his actions, taken as chief of TOD, "were consistent with other white supervisors' actions[,]" who were not subject to any adverse employment action based on their behavior—which is sufficient at this stage to survive Defendants' motion to dismiss. Dkt. 9, at 18-19, 20-21, 23 (identifying other white chiefs of DPS divisions), 26 (alleging that "[n]one of the white employees, including McCraw, Martin, Goodson, Prestridge, and others, who engaged in the same or similar actions as alleged by DPS against Thomas, as listed above, were ever disciplined, demoted, removed from their positions for months at a time, much less placed under surreptitious investigation like DPS did with Thomas"), 36 ("The conduct and performance of his duties engaged in by Thomas was consistent with DPS policies and practices and DPS's white management representatives' conduct, yet only Thomas was disparately subjected to the above-listed adverse actions and harms."); *Wei-Ping Zeng v. Tex. Tech Univ. Health Scis. Ctr. at El Paso*, No. 19-99, 2019 WL 4565101, at \*5 (W.D. Tex. July 29, 2019) (denying motion to dismiss Title VII disparate treatment claim because the complaint "allege[d] the employees were in a similar position, which is sufficient at the motion to dismiss stage because a close factual analysis of whether [plaintiff's] fellow employees were sufficiently similar is more appropriate for resolution on summary judgment"); *see also Dunlap v. Denison Indep. Sch. Dist.*, No. 4:09CV234, 2010 WL 1189561, at \*3 (E.D. Tex. Mar. 25, 2010) ("In claiming she was treated

9

differently than a similarly situated white employee, however, Plaintiff has sufficiently stated a claim for racial discrimination and those claims remain.").

While Defendants might factually dispute that chiefs of other DPS divisions are "similarly situated" to Thomas or that they behaved similarly to Thomas, such a dispute is more appropriately resolved at the summary-judgment phase. *See Cicalese*, 924 F.3d at 767 (reversing dismissal of disparate-treatment claims because the district court's "analysis of the complaint's allegations—scrutinizing whether Appellants' fellow employees were really 'similarly situated' and whether Jacobs's and Tyler's derogatory statements about Italians amounted to 'stray remarks'—was more suited to the summary judgment phase"); *see also Johnson v. Berry Plastics Corp.*, No. 15-1078, 2015 WL 5568067, at *3 (W.D. La. Aug. 28, 2015), *R. & R. adopted*, 2015 WL 5599001 (W.D. La. Sep. 22, 2015) (denying motion to dismiss Title VII pay discrimination claim because the similarities between plaintiff and the comparator "remain an issue for discovery" and "[f]or now, it suffices that plaintiff's allegations provide defendant with fair notice of the claim against it"). The District Judge should deny Defendants' motion to dismiss Thomas's Title VII discrimination claim against DPS.

### B. Thomas has adequately pleaded his retaliation claim brought under Title VII.

Thomas also alleges that DPS retaliated against him in violation of Title VII by placing him under investigation and demoting him based on his opposition to "discrimination and retaliation in the workplace against other employees and himself[.]" Dkt. 9, at 37-38. Defendants attack Thomas's retaliation claim for failing

to sufficiently allege a causal connection between his protected activities and the adverse employment actions, arguing that DPS's "mere knowledge of Thomas' opposition to discrimination cannot provide the requisite causal link to the adverse employment action." Dkt. 10, at 10. Thomas responds that he has adequately pleaded facts showing a causal connection between his protected activities, which began in July 2024, and the adverse employment actions. Dkt. 11, at 10. Thomas further argues that even if his October 6, 2024, formal complaint forms the basis of his protected activity, he was demoted within two months of lodging that complaint. *Id.* In reply, Defendants insist that Thomas's actions prior to October 2024 can be reasonably interpreted as insubordinate and that the formal complaint he made to OIG was not known by any DPS decision-maker at the time Thomas was demoted. Dkt. 12, at 4.

To state a claim for retaliation under Title VII, a plaintiff must allege that "(1) [he] engaged in protected activity, (2) [he] suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). While a plaintiff need not make out a prima facie case of retaliation at the pleading stage, he must "allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Id.* (quoting *Cicalese*, 924 F.3d at 768). To plausibly allege the ultimate element of causation, a plaintiff must "plead facts permitting the reasonable inference" that defendant took the adverse employment action because of plaintiff's protected activity. *Id.* (citing *Iqbal*, 556 U.S. at 678). A plaintiff must also plead facts

11

"permitting at least an inference of [his] employer's knowledge of [his] protected conduct in order to establish the required causal link between [his] conduct and the alleged retaliation." *Id.* (citing *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)).

Here, Thomas has sufficiently alleged a causal connection between his protected activity and his demotion. In his amended complaint, Thomas alleges that he engaged in protected activity by "standing up against unfair practices that appeared to be having racial and gender-based discriminatory impacts within TOD" and filing a formal written complaint about race discrimination and harassment. Dkt. 9, at 31, 37; *Pacheco v. Universal Forest Prods. W. Div., Inc.*, No. 3:08-CV-1922-N, 2010 WL 11618656, at \*5 (N.D. Tex. Aug. 31, 2010) ("Title VII-protected activities, for purposes of a retaliation claim, include 'oppos[ing] any practice made an unlawful employment practice by this subchapter.'" (quoting 42 U.S.C. § 2000e-3)). Defendants are thus incorrect that Thomas's filing of a formal written complaint in October 2024 is the only form of protected activity described in his complaint, as he alleged the Defendants were aware of his efforts to ameliorate discrimination against other employees at DPS before he filed the formal complaint. Dkts. 9, at 23; 10, at 10; *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the reasonable belief that unlawful discrimination is at issue.").

12

Thomas also alleges that the director's inquiry into him was initiated shortly after Defendants became aware of Thomas's "actions reversing the decisions of mostly white supervisors under Thomas's supervision since they were taking unjust actions against their subordinates, and it happened that the majority of the harmful actions were being taken against mostly racial minority or female employees." Dkt. 9, at 26-27; *Reedy v. CITGO Petroleum Corp.*, No. CIV.A. H-10-2971, 2011 WL 797498, at \*7 (S.D. Tex. Feb. 28, 2011) ("Temporal proximity alone, if sufficiently close, can prove a causal connection."). Moreover, Thomas was officially removed from his position as chief in December 2024, approximately two months after he lodged the formal complaint alleging race discrimination and retaliation. *Id.* at 20; *see also Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (noting that "a period of two-and-a-half months" is " close enough to show a causal connection" (internal citations omitted)).

Given that Thomas's burden at this stage to allege causation is "not onerous," and he ultimately "need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision," the undersigned finds that Thomas has alleged sufficient facts supporting the causation element of his retaliation claim. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The District Judge should deny Defendants' motion to dismiss Thomas's retaliation claim brought under Title VII.

**C.    Thomas's hostile-work-environment and constructive-discharge claims brought under Title VII should be dismissed.**

Thomas brought hostile-work-environment and constructive-discharge claims under Title VII, alleging that Defendants' actions constituted "severe or pervasive harassment" such that "a reasonable employee would have felt compelled to quit their employment rather than continue to be subjected to such harassing mistreatment. Dkt. 8, at 38-39. Defendants argue that Thomas's hostile-work-environment and constructive-discharge claims against DPS should be dismissed because he has not alleged sufficiently severe or pervasive harassment to support such claims. Dkt. 10, at 7-10. Thomas responds that alleging that he was subject to an investigation and demoted are sufficient to plead "persistent racial and retaliatory harassment that affected his working conditions." Dkt. 11, at 13. In reply, Defendants maintain that Thomas "fail[ed] to allege any conduct of the type that typically forms the basis of a hostile work environment claim." Dkt. 12, at 2. The undersigned agrees.

The Supreme Court has held that Title VII proscribes the creation of "a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a claim for hostile work environment, a plaintiff must allege that he: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651

14

(5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).[1] An employee has a cause of action under Title VII when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (citations and internal quotation marks omitted). The Fifth Circuit's "hostile work environment standard is a 'demanding' one, and requires proof of severe or pervasive conduct that can be categorized as 'extreme.'" *Duplechin v. Potter*, No. H-10-2541, 2012 WL 845160, at *5 (S.D. Tex. Mar.12, 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, Thomas alleges that DPS "subjected him to sham and misrepresented investigations, demoted him, cut his pay by more than $100,000.00 annually, and other professionally stagnant, humiliating, and harmful circumstances," beginning with the initiation of the director's inquiry in July 2024 and culminating in his December 2024 demotion and February 2025 resignation. Dkt. 9, at 2, 20, 38. Thomas's hostile-work-environment claim is thus grounded in his allegations that the director's inquiry into his conduct and ultimate demotion were harassment meant to target him based on his race or protected activities. Dkt. 9, at 38. Yet, "[a]n internal

---

[1] As Defendants point out, the Fifth Circuit has "not recognized a retaliatory hostile work environment cause of action." Dkt. 10, at 7; *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 742 (5th Cir. 2017). In *Bryan v. Chertoff*, 217 F. App'x 289, 293 n.3 (5th Cir. 2007), the Circuit acknowledged that "[a]t least the Second, Sixth, Seventh, Ninth, and Tenth Circuits have adopted this cause of action" and found that it "need not decide whether to recognize a retaliatory hostile work environment claim" because plaintiff had not established a prima facie case of hostile work environment. The undersigned similarly need not decide whether such a claim exists within the Fifth Circuit since Thomas has failed to plead a prima facie case for hostile work environment.

15

investigation of a plaintiff's conduct is not sufficiently severe to alter a term, condition or privilege of employment" and "demotion … is a one-time event and does not represent the harassment contemplated by" claims for hostile work environment. *Rowe v. Jewell*, 88 F. Supp. 3d 647, 675 (E.D. La. 2015) (citing *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009)); *see also  Buchanan v. Exxon Mobil Corp.*, No. CIV.A. H-04-2889, 2006 WL 492605, at *9 (S.D. Tex. Mar. 1, 2006) (holding that demotion is insufficient to support a hostile work environment claim). Thomas has thus failed to state a claim for hostile work environment.

Because a claim for "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim," Thomas's constructive-discharge claim—which rests on the same facts as his hostile-work-environment claim—fails for the same reasons. Dkt. 9, at 39; *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)); *see id.* ("Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." (citation omitted)). The District Judge should dismiss Thomas's hostile-work-environment and constructive-discharge claims.

**D.    Thomas's constitutional claims against the Individual Defendants should be dismissed.**

Thomas finally brought claims against the Individual Defendants, in their individual capacities, for violations of his rights under the First Amendment and Fourteenth Amendment. Dkt. 9, at 40-45. Specifically, Thomas alleges that the Individual Defendants discriminated against him "based on his race or protected

speech" by "unlawfully placing Thomas under surreptitious investigation" and "removing him from his position without nondiscriminatory justification[.]" *Id.* at 40, 42, 44. Defendants argue that Thomas's Fourteenth Amendment claims against the Individual Defendants fail because he improperly "lumps the actions of the Individual Defendants together, making global and conclusory allegations against them as a group" and that his First Amendment claims are similarly deficient because Thomas made the allegedly protected speech while serving as a public employee. Dkt. 10, at 10-16. Defendants also raised the defense of qualified immunity. *Id.* at 16-17. Thomas counters that he has in fact leveled specific allegations against each of the Individual Defendants and insists that "he engaged in protected speech as a citizen on matters of public concern outside of his official job duties" such that his speech is protected by the First Amendment. Dkt. 11, at 16-18. He also posits that his complaint is sufficient to overcome the Individual Defendants' assertion of qualified immunity because the rights he seeks to protect are clearly established. Dkt. 11, at 19-20.

The undersigned finds that the Individual Defendants are entitled to qualified immunity on Thomas's Fourteenth Amendment equal-protection and First Amendment retaliation claims. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Government officials are entitled to immunity from section 1983 suits for damages arising from their duties unless the plaintiff can show "(1) that the officer 'violated a federal statutory or constitutional right' and (2) that 'the unlawfulness of the[ ] conduct was clearly established at the time.'" *Ramirez v. Escajeda*, 921 F.3d

497, 500 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *see also Lesikar v. Harris Cnty., Tex.*, No. 4:24-CV-00470, 2024 WL 3418176, at *4 (S.D. Tex. July 15, 2024) ("Even on a motion to dismiss, the plaintiff has the burden to rebut qualified immunity." (citing *Club Retro*, 568 F.3d at 194)).

Here, Thomas has not met his burden of demonstrating that the alleged unlawfulness of the Individual Defendants' conduct was clearly established. *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016))). In support of his Fourteenth Amendment claims, Thomas cites *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996), for the proposition that it is clearly established "that the equal protection clause is violated by intentional racial discrimination." Dkt. 11, at 19. In *Vera*, however, the Fifth Circuit recognized that the Equal Protection clause prohibits intentional discrimination but found that plaintiff had not presented sufficient evidence that he was treated less favorably than those outside of his protected class. *Vera*, 73 F.3d at 609-10.

While *Vera* stands for the general proposition that the Equal Protection clause is "violated only by intentional discrimination," it is "not sufficiently analogous to the facts at issue" in this case to show that it was clearly established that the Individuals

18

Defendants' actions in placing Thomas under investigation and demoting him violated the Fourteenth Amendment. *Ramirez v. Martin*, No. 3:20-CV-1927-S, 2021 WL 6063594, at *5 (N.D. Tex. Dec. 22, 2021), *aff'd*, No. 22-10011, 2022 WL 16548053 (5th Cir. Oct. 31, 2022); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) ("[T]he clearly established law must be 'particularized' to the facts of the case." (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Because Thomas has only offered case law identifying clearly established law "at a high level of generality," he has not met his burden of rebutting the Individual Defendants' assertion of qualified immunity for his Fourteenth Amendment claims. *White*, 580 U.S. at 79.

Thomas has similarly failed to meet his burden of identifying clearly established law in support of his First Amendment claims against the Individual Defendants. Thomas insists that "the right of public employees to speak as citizens on matters of public concern without facing retaliation is clearly established (over forty years) regardless of where the speech took place or if the subject of the speech related to the workplace." Dkt. 11, at 19-20 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). Yet such a general statement as to the contours of the protections provided by the First Amendment does not demonstrate "'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Moreover, Thomas's cited cases are not "particularized" enough to clearly establish his rights under the facts alleged here. *White*, 580 U.S. at 79.

19

In *Givhan*, for example, the Supreme Court concluded that public employees maintain their free-speech rights even when they communicate privately with their employers but did not find defendant liable for such a violation; instead, the Court remanded the case for further proceedings consistent with that conclusion. *Givhan*, 439 U.S. at 415-16. Similarly, in *Pickering*, the Supreme Court confirmed that "absent proof of false statements knowingly or recklessly made by [plaintiff], [his] exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment" in a case where plaintiff's employment as a teacher was terminated after he published a letter in a local paper criticizing his employer's handling of "past proposals to raise new revenue for the schools." *Pickering*, 391 U.S. at 565, 574. Once again, neither case is "particularized" enough to clearly establish Thomas's rights under the facts alleged here. *White*, 580 U.S. at 79.

Thomas also cites *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008), for the proposition that "it is well-established that speech relating to official misconduct or racial discrimination almost always involves matters of public concern." Dkt. 11, at 17. While that may be true, the facts of *Charles* are still not sufficiently analogous to this case to serve as the clearly established law in support of Thomas's First Amendment claims. 522 F.3d at 514. Notably, the plaintiff in *Charles* made an external complaint to members of the Texas legislature regarding racial discrimination at the Texas Lottery Commission, which "was not made in the course of performing or fulfilling his job responsibilities, was not even indirectly related to

his job, and was not made to higher-ups in his organization." *Charles*, 522 F.3d at 514-15; *see also Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006) ("We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties."). Here, in contrast, Thomas's amended complaint makes clear that his allegedly protected speech in reversing decisions of his subordinates was made—contrary to his insistence in his response— in the course of performing his duties as chief of TOD. Dkts. 9, at 19, 22, 40-45; 10, at 18. Thomas's cited cases thus do not formulate "clearly established law" with the degree of specificity required to overcome the Individual Defendants' assertion of qualified immunity; he has thus failed to rebut their assertion of qualified immunity on his First Amendment claims. *White*, 580 U.S. at 79.

Because the Individual Defendants are entitled to qualified immunity on Thomas's Fourteenth and First Amendment claims, the District Judge should dismiss Thomas's constitutional claims.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss, Dkt. 10. The motion should be granted as to Thomas's hostile-work-environment and constructive-discharge claims against DPS, as well as his constitutional claims against the Individual Defendants, and otherwise denied.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED May 22, 2026.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

22